at all. Whenever you're ready, Mr. President. Thank you, Your Honor. May it please the Court, I am Dan Miller. I have the privilege of representing the key TAM relater in this matter, Jeffrey D'Agostino. I would like to reserve two minutes for rebuttal. Yes. The District Court's decision below is replete with error, starting with the relater's efforts to amend his complaint. Multiple efforts. First, the District Court struck relater's amendment as a right under Rule 15a, and in so doing ignored significant amendments that were made to the rule in 2009. Mr. Miller, I don't really understand from your brief what significance, if any, on the amendment issue you attach to the fact that this action was pending for a long time with service stayed and there were amendments during the period of service. Does that have any effect on the ultimate outcome or way to look at the action? No. Okay. All right. So this case would be the same if there was no stay of service in effect? I'm sorry, I don't understand. The outcome of the amendment issue would be the same had there been no stay of service in effect, no suspension of service. If I understand the Court's question correctly, the answer to that is yes, the outcome would have been the same. Okay. Under the 2009 amendments, which, by the way, this circuit has not addressed, nor have, to our research, any circuit addressed, whether the precise question here, which is whether when there had been a previous amendment as of right, while in this matter was under seal and pre-service, does a plaintiff in this case have the opportunity to amend as of right in response to a motion to dismiss under Rule 12? And that's exactly what we assert, Your Honors. The commentary to the rule is very plain. In at least three places, the commentators attach the right to amend as of right to the response of pleading, whether that's an answer or a motion to dismiss, for the very purpose of avoiding what we have here, which is ultimately what we hope to be seriatim motion practice, which is the whole reason that the rule was amended was to allow the plaintiff to respond to the defendant's pleading to address the arguments made in that. And that's what we did here. We trimmed the – Excuse me. Sorry. That doesn't seem to me to be the purpose of the rule. It's amended. When I read the advisory committee notes, it seems to me the advisory committee is focused on the expiration of the period for filing motions to amend as of right, not to any attempt to change the one case, one amendment as of right rule or the inception date for when such an amendment can be made. Your Honor, the one purpose of the amendment was to do precisely what you said, which previously a response of pleading terminated the right to amend as of right. But the advisory committee went much further. There are several quotes in the brief which specifically talk about forcing the pleader to consider the wisdom of amending his complaint to meet the arguments made in the motion. Three times they notice they reference the fact that the purpose, or at least a main purpose of the amendment, is to allow the pleader to re-plead. And that's what we did here. We dropped several defendants, and we dropped several claims. Would have streamlined this litigation, and we wouldn't be here right now had the district court properly considered the amendment as of right. But there's nothing in either in the commentary that indicates that allowing the plaintiff to re-plead, which of course is the purpose, has been all along the purpose of an amendment as of course, that there was any intention on the part of the drafters to alter the one plaintiff, one case, one amendment as of course scenario or paradigm that's been in effect ever since we've had Rule 15. Judge, I would respectfully suggest that that is not, that's what defendants argue, but I don't think that's the law. We have not seen in any of the briefing or in any of our own research a case that held, if certainly in this circuit, that under no circumstances will a plaintiff ever get more than one amendment as of right. We checked the legislative, not the legislative history, all of the notes to the initial rules. We've looked at this court's precedents, including in the Floria Silva case, albeit in dicta, but this court said the plaintiff failed to exercise her right to amend as of course in response to each motion to dismiss, which implies that in seriatim motion practice a plaintiff would get another amendment. I read that paragraph. All that that said was that the plaintiff had that right and it presented itself several times and she exercised it on none of those occasions. It wasn't an endorsement of the multiple times. I mean, there isn't a case in this circuit or any circuit, to my knowledge, that has ever ratified the right of a plaintiff to amend in a single case more than once as a matter of course. I mean, can you ratify or cite me to any such case? No circuit court decisions, Your Honor. Nor are there any circuit court decisions that say to the contrary. Counsel, the multiple amendments that you filed to your initial complaint before unsealing took place, what was the purpose of those amendments? What were you trying to accomplish with those amendments? Judge, there's a first to file rule, as you know, in the False Claims Act, and that in essence creates to some degree a race to the courthouse. And it's not uncommon for a plaintiff to go through his or her documents more carefully over time and add additional information so that the government can consider that in conducting its investigation and determining whether to intervene. So the purpose of those amendments is to increase the likelihood that the government might choose to intervene? Is that what's going on? That's part of it, Your Honor, certainly. The other part of it is to heighten for the purposes of litigation the notice that you're providing to the defendant. And all that's taking place, the defendant has no awareness that any of this is taking place. Is that correct? That's correct, Your Honor, which is part of the reason we argue that, we seem to be in a rush to get through with it. This case was really in its infancy from a litigation standpoint. The case had just become unsealed. The defendants had just been served with the complaint. They filed their motions to dismiss, and within two weeks or three weeks, we filed our amended complaint, trimming the case. So who is in any way burdened, prejudiced, disadvantaged by your choice in response to the motion to dismiss, to file this newly amended complaint? I guess that's your point. Nobody is burdened, disadvantaged, or prejudiced. Except this court to have to hear this case when we should be back in the trial court dealing with the amended complaint. But certainly there's no prejudice to the defendants. The rule expressly contemplates, even in putting aside the amendment as a right issue, the rule contemplates that if a motion to dismiss is granted, that a plaintiff typically would be granted at least one opportunity to amend to meet the district court's rulings. And that's exactly what we wouldn't be doing here if we had been allowed to amend. Did the court have any, in those prior amendments before unsealing, did the court have any involvement in that? Did it require any action by the court? The court granted the, we had three prior amendments. The court granted motions for leave as to two of them. So the court considered them and granted them. Which has some significance, doesn't it? Because obviously you believed, after you had made your first amendment as of course, that you needed the court's permission to file the second and third amendments. It was a belt and suspenders decision, Your Honor. We didn't know because the decisions weren't out here. Thank you. May it please the court. Joshua Levy on behalf of defendants EV3 and MTI. Mr. Levy, can I ask you to start at a point where Judge Lopez's last question would take us? Judge Lopez was inquiring about prejudice to the defendants. And the fact of the matter is the way Judge Stearns approached this case, Judge Stearns never made the analysis that Rule 15A2 would normally require, but rather looked at whether there was good cause to file this, applying the Rule 16B analysis, right? Are you aware of any case where an appellate court has upheld the application of the rather stringent Rule 16B standard where the scheduling order did not place any limitation on the time for filing amendments? Judge, I'm not aware of a case where the scheduling order did not address the time for motion to amend and a court applied the good cause standard. How can the 16B standard be applicable without a 16B is designed to ensure compliance with and enforcement of scheduling orders. You've got a scheduling order in this case that, as you just conceded, places no restrictions at all on the filing of amendments to the pleadings. So how can the court then apply that standard in determining whether to allow the plaintiffs to file this amended complaint? Yes, Your Honor. That standard Judge Stearns applied. There was a scheduling order in place. I think it's an open question when you have a scheduling order that does not address the motion to amend. But I think this Court absolutely should affirm Judge Stearns' decision, which was not replete with errors across the board, on the 15A2 standard, on the freely given. But Judge Stearns never made a 15A2 analysis. And when a district court applies the wrong legal standard, good cause, which is pretty stringent, as opposed to we freely given, which is pretty generous, we excuse that error as harmless on review only if the record compels, would compel a finding that the motion should be denied. And here you've got a situation where Judge Lopez put his finger on it in his earlier question. There's no real prejudice to the defendants here. This case is, from a litigation point of view, in its early stages. Let me address that, Your Honor. Because the prejudice is not the operative standard here. As you wrote, Your Honor, in the nicotine case, the standard is whether the record evinces evidence to support the denial of the motion to amend. That's true. That's true where the denial is predicated on the correct legal standard. I'll grant you there's evidence that would support a denial here, but there's also a record that would support a granting of leave to amend. That's what your problem is, that there's nothing decisive. Let me address that, Your Honor, because I don't think the record supports a granting of a leave to amend here. This is under the leave freely given standard? Yes. A1A amendment is right. This plaintiff didn't act like that was the operative law. There's a lot of arguments. I don't want to take my time on that because I think this is going to the heart of this case, Your Honor, under 15A2, leave freely given. What happened down below is that it's the plaintiff's burden to file a motion to amend the complaint and to provide the district court with the grounds supporting the motion to amend. That's actually what this relator did in the first two times he filed the motion to amend. When we got to this fourth amended complaint, his fifth bite at the apple, his fifth complaint, he put all his chips on, I have a right to amend as of right, and I don't have to go under the freely given standard. He passed on multiple opportunities to provide Judge Stearns. You know, counsel, I would have some sympathy for that argument, except it overlooks one thing. If Judge Stearns had granted the motion to strike and simply said, you've got no right to file this without leave of court, right, I'm going to strike it, right? But Judge Stearns didn't do that. Judge Stearns was a very good judge and thoughtful, said, I'm not going to strike this complaint. I'm going to analyze whether or not the plaintiff should be entitled to file an amended complaint. And he went on to apply the good cause standard. That's what happened here. He did, Your Honor, and I think that it's an open question in the First Circuit if that's the right standard. But I submit the court to look at this under the freely given standard. The district court received a motion to modify the scheduling order, laying out all the grounds on amendment as of right, never addressing the motion to amend under A2. The district court issued his order and he gave the relator extra time to file his opposition to the motion to dismiss. The relator did not assert in that opposition to the motion to dismiss the grounds supporting a 15A2 amendment. He came to oral argument. Excuse me. By the time the relator filed the opposition to the motion to dismiss, the amended, his attempt to amend the complaint had already been defeated by use of the good cause standard. I respectfully disagree, Your Honor. The motion to file an amendment as of right had been defeated.  The plaintiff, the relator, never filed a motion to amend the complaint, either addressing the good cause standard or saying No, because the judge had already denied it. The judge had already said, you've got this motion to amend, all right, said, in effect, I'm going to overlook the fact that you have no right to file it as of right. I'm going to address it under my power to regulate amendments. That power is governed by the good cause standard, and I deny it because there's no good cause. So there's no need when four days later or six days later the opposition is filed to re-argue that. Well, I think, Your Honor, that Judge Stern set forth, Relator, you're wrong. It's not an amendment as of right. I'm looking at this document, and the relator never responded to the district court. At argument, post-hearing, he asked for more briefing. The district court granted him that. He never addressed why he should be allowed to amend his complaint under either 15-A-2 or Rule 16. He waived those arguments down below. If you look at the record here, in Rule 15 cases, we've talked about the hands-on judgment the district court is to be deferred to, and the context is everything in this situation. This case has been going on for years. It's not in its infancy, I submit. This court is very familiar with how these key 10 cases operate. My client has been responding to this issue for several years now. This is not a case in its infancy. And if you look at the grounds, undue delay, futility of amendment. Let me ask you about futility. Yes, Your Honor. I gather your position is that granting this motion to amend would be futile because the amended complaint has all of the same deficiencies as the prior complaint, and yet it appears that this amended complaint was designed in large part to response, to respond to many of the deficiencies that you cited. It seems to me that there's a good argument that the complaint has been successful in addressing many of those arguments about the deficiencies in the complaint that you were responding to with your motion to dismiss. I submit, Your Honor, that the fourth amendment complaint does not. It would still be a futile complaint. I would actually take the related. Doesn't it provide much of the specificity that you said was lacking in the earlier complaint? It does not provide the specificity that rises to the Duxbury standard. Duxbury was a close call according to this court in 2013. In that case, you had eight hospitals. You had the dates of the claims. You had the amounts of the claims. All the fourth amendment complaint adds is that names of the hospitals that this relator called upon and the time period in which he called upon those hospitals and the aggregate amount of the product purchase. As set forth in the briefing, these are services that are reimbursed on an aggregate basis, a DRG basis. Government isn't paying for the actual product. They're paying for the embolization therapy. So there's no actual amount of the claims, how the claims are submitted. None of that is covered in the new complaint. By the way, one indication it may be futile is the relator wants to file yet another complaint. In page 27 of his brief, he asks this court to let him have yet another amended complaint. Don't even rely on the one that the district court struck. Let me just go for a moment in the time I have left on some other issues relating to futility, which is the 12B6 problems with this complaint. The relator's position here is that every single ONIX procedure, every single Axiom procedure was a false claim. He's swinging for the fences with this complaint. He's saying I'm exempt from this court's requirements in G and in Duxbury because I have a theory that had the FDA known about the things that weren't revealed in 2003, it would have taken the product off the market and that every Axiom product is defective. He needs to show under Axiom that those were actually worthless services in order to make up his claim. He compares his Axiom case to the defective munitions in the Civil War. If he wants to go down that road of a defective product, he needs to show that the services were worthless under the Mix case out of the Second Circuit and the Hoop case out of the Eighth Circuit. He needs to allege facts that the services that were provided to these patients that the government paid for were worthless, did not provide the embolization therapy that was the purpose of the procedure. He has not alleged any facts in that regard. He's merely alleging that the product was defective. That does not violate a material precondition of payment. If I may just quickly on Onyx, Your Honor, with the time I have left. You have no time left, but go ahead. Thank you, Your Honor. I am going over. It's going up, not down. But on Onyx, he also claims fraud in the inducement and he omits in his reply brief that he does not have evidence that the speakers in 2003, when this relator was not even employed by the company, he doesn't have evidence that they knew that the statements were false when they were made. He's relying on 2005 conduct to show that statements made in 2003 were false. That fails to allege a claim under Iqbal and Twombly of a plausible allegation that the defendants knew that the statements were false when made. So, Your Honor, Judge Lopez, I don't think he meets the specificity bar, but even if you look past that, there's some core 12B6 problems with this complaint that every single claim was a false claim. And we stand on the briefs and the other issues. Thank you, Your Honor. Excuse me, counsel. I have one minute. I'm sorry. I guess when I only have one minute, I should start by saying with the time I have left. On behalf of Stephen Hagen, on behalf of John Harden and Burke, well, just a couple of things to say in my minute. We're not mentioned in the opening brief except to say that we filed and joined in the motion to dismiss. This court has held, as recently as two months ago in Sparkle Hill, that when you reserve your arguments as a reply brief, they're waived. So when he's talking about conspiracy and everything else in the reply brief, that's all waived. And that goes, actually, I think, to some of what Judge Lopez is asking. And I do note also that in the docket entry 94, Judge Stern said below that he did find prejudice to the defendants and to the court's ability to manage its own docket. So I guess he was finding that he himself was prejudiced, at least the court was prejudiced, in partial answer to your question. But also, in further answer to your question, if you read the brief on page 16, what the appellant is saying is that every time there's a response of pleading, he gets to file an amended complaint. And as Mr. Levy just pointed out, he's already on his fifth amended complaint. He was still arguing about the third. As an individual defendant, every time we file a motion to dismiss, he files another amended complaint. We never get to respond. We never get to represent ourselves. We never get to get on with our lives. Your Honor, or Your Honors, I want to quickly address the appellee's arguments. I'll go in reverse order. With respect to the individual defendants, we expressly incorporated by reference all of the arguments in our opening brief by defining, I think, on the first or second page of the brief, the defendants to include all the defendants, and that includes the individual defendants. In terms of the argument that EV3 and MTI make that somehow Relator failed to do something below, we were in shock when we got the court's order, not necessarily shocked that the court ruled that we did not have an amendment as of right, but that the court ruled that Rule 16 applied when it had not set a date for amending the pleadings, and told us in its order, file your answer or file your opposition to the defendant's motion. I'll give you six or seven more days. We did not, in any type of real way, have the opportunity to, or have any reason to believe that the trial court was prepared to hear a motion to amend the complaint. Notwithstanding that, in our motion and in non-boilerplate fashion, we expressly said in our brief that we would appreciate if the court were to dismiss any or part of the claim to have the opportunity to amend, and referenced our proposed complaint and the additional evidence that we had since compiled in requesting leave to amend. Counsel, when you filed your motion to amend in response to the motion to dismiss, did you make clear the basis upon which you were filing that amended complaint? Did the court understand what rules that you were relying upon in filing that amended complaint? Yes, Your Honor, because we asked for leave to amend, which would be Rule 15, under Rule 15, and we repeated that at oral argument. Now, we obviously were in a little bit of a catch-22 because the court had decided that the good cause standard applied. If the court permits, I'd like to address one argument that EB3 and MTI made with respect to the complete falsity, and they referenced the Gee, Duxbury, and Ross cases. None of those cases stand for the notion that a theory of complete falsity requires either specific false claims or a statistical inference that permits the inference of fraudulent claims. They get close, and Gee comes the closest, but none of them hold that. And, judges, we respectfully suggest that this is a theory worth considering. We have proven, if we're right, and if the district court accepts our facts as true, which it's required to do at the motion to dismiss stage, we have a fraudulent inducement which would render all claims, even defendants admit, under it false. What utility is there in requiring a further statistical analysis which would provide less certainty than the certainty we've already provided if every claim is false? And that's our position on that, Your Honors. With respect to the defendant- Thank you, Counsel. I'm sorry, Your Honor. Thank you.